## Allegheny County, Southern District, Tax Assessment Appeals.

Argued October 30, 1972, before President Judge BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS, and BLATT.

*Donald J. Lee,* with him *Dougherty, Larrimer & Lee,* for plaintiff-appellants.

*Gilbert E. Morcroft,* for intervenor, Borough of Crafton.

*Anthony P. Bartiromo,* with him *Lichtenstein & Bartiromo,* for intervenor, Township of Scott.

*Richard G. Zeleznik,* for intervenor, Borough of West Mifflin.

*Alfred James Duff,* with him *Miller, Entwisle and Duff,* for intervenor, Borough of Brentwood.

*John F. McGinty,* with him *Smiley and McGinty,* for intervenor, Township of South Park.

*Henry E. Rea, Jr.,* with him *Brandt, McManus, Brandt & Malone,* for intervenor, Borough of Pleasant Hills.

*Thomas M. Rutter, Jr.,* Assistant County Solicitor, with him *John F. Murphy,* Assistant County Solicitor, and *Francis A. Barry,* County Solicitor, for appellees.

294

Opinion per Curiam, December 19, 1972:

These consolidated cases are appeals from an order of the Court of Common Pleas of Allegheny County in which Judge Olbum dismissed the complaint for lack of jurisdiction of the subject matter.

We have carefully researched the law in this area and agree with the lower court that this case is controlled by *Rochester & Pittsburgh Coal Company v. Indiana County Board of Assessment*, 438 Pa. 506, 266 A. 2d 78 (1970). That case, as does the instant case, involves an objection to the levying of taxes on the basis of a partial revaluation of property in one county.

We conclude that we must affirm the court below based upon the thorough opinion of Judge Olbum which is made a part hereof by reference thereto and set forth below in its entirety.

"Olbum, J.

"In these two equity cases which have been consolidated by the Court, the plaintiffs, including intervenors, are sixteen municipalities situate in the 'Southern District' of Allegheny County; and a number of individual residents and real estate taxpayers in four of said municipalities.

"Plaintiffs seek a decree declaring unconstitutional the provision of the Second Class County Assessment Act which empowers the defendant Board of Property Assessment, Appeals and Review (Board) to adopt a system of triennial assessments by dividing the County into three districts, which system has been in effect in Allegheny County for a number of years: Act of 1939, P. L. 626, §7, as amended, 72 P.S. §5452.7. Plaintiffs contend that the legislative enactment contravenes the uniformity requirement of Article VIII, Section 1, of the Pennsylvania Constitution, and the Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States. Plaintiffs also contend that the 'application of the assessment law' in Alle-

gheny County is likewise unconstitutional because, beginning in 1969, the Board began its triennial assessments for the years 1970, 1971 and 1972 in the 'Southern District' of the County, raising the ratio of assessments to market value of real estate in said district to 50%, while a much lower ratio prevails in the two remaining districts of the County.

"In addition to a decree of unconstitutionality as aforesaid, the complaints seek a decree (1) ordering that all increases in triennial assessments resulting from defendant Board's 'new method of assessing' be held in abeyance until completion of reassessment of all real estate in Allegheny County on the basis of the same ratio to fair market value; (2) suspending all increases in triennial assessments resulting from the Board's 'new method' until completion of the reassessment of all real estate in Allegheny County on the basis of the same ratio to fair market value; and (3) enjoining defendant Board of County Commissioners from levying and collecting any tax on increases in triennial assessments from defendant Board's 'new method of assessing' until completion of the reassessment of all real estate of Allegheny County on the basis of the same ratio to fair market value. Plaintiffs at No. 1341, April Term, 1970, have filed an amendment to their complaint, which consists of an amplification of their averment of lack of an adequate remedy at law. In the amendment plaintiffs asseverate the unconstitutionality also of Act No. 138, approved June 22, 1970, which is an amendment to the Second Class County Assessment Law, providing that interest commencing one year after the date of payment of taxes be included with a refund of excess taxes paid in such counties.

"The defendants answered both complaints, in substance denying that a new method of assessing real estate was adopted in 1969, and averring that it is ad-

justing real estate assessments in the 'Southern District' so that such assessments shall be at a uniform level to conform to the ratio of assessments to market value in effect in Allegheny County, as confirmed by the Pennsylvania State Tax Equalization Board. Defendants aver that this adjustment process is a continuous one and accords with the Constitution and the laws of the Commonwealth; that the Board assesses property uniformly; and that 'the uniform level of the ratio of assessments to market value . . . is in all three triennial districts of Allegheny County at or reasonably near the 50% ratio as determined by the calculations of the State Tax Equalization Board.'

"The question of the jurisdiction of this Court of Equity over the subject matter of these cases was not raised by any party hereto. However, jurisdiction cannot be conferred on a Court or waived by the parties, and a Court is duty-bound to raise the issue sua sponte: Eberhardt v. Ovens, 436 Pa. 320; Gardner v. Allegheny County, 382 Pa. 88; Pa. R.C.P. 1032(2), made applicable to actions in Equity by Pa. R.C.P. 1501. We therefore ordered an argument, limited to the question of equity jurisdiction, particularly in light of the Opinion of the Supreme Court in Rochester & Pittsburgh Coal Company v. Indiana County Board of Assessment and Revision of Taxes, 438 Pa. 506, filed May 27, 1970. We are now impelled to the same conclusion as that reached by the Supreme Court in Rochester, supra, namely, that this Court lacks equity jurisdiction over the subject matter because plaintiffs have an adequate statutory remedy available to them.

"In Rochester, supra, an action in equity was brought to enjoin the application of a method of taxation undertaken by the Board of Assessment and Revision of Taxes of Indiana County. The complaint alleged that during 1968 the assessors undertook a revaluation and reassessment of real estate in certain areas of Indi-

ana County which allegedly resulted in substantial increases in many assessments in some areas, while assessments of other parcels in the County remained unchanged. Contending that this reassessment method violated the Uniformity Clause of the Pennsylvania Constitution and the Equal Protection Clause of the United States Constitution, plaintiff sought an injunction to restrain the Board from applying the revised assessments. The Supreme Court affirmed the lower Court's dismissal of the Complaint for lack of equity jurisdiction, saying at page 508: 'In a positive sense, what is required to confer jurisdiction on an equity court is the existence of a substantial question of constitutionality (and not a mere allegation) *and* the absence of an adequate statutory remedy.' (Emphasis added.)

"Plaintiffs here argue that Rochester, supra, is distinguishable from the instant case, because that case involved an attack on the constitutionality of the application of the law, whereas the instant case involves a direct attack on the constitutionality of an Act of the Legislature as written.

"It is true that the Supreme Court did say in Rochester that the plaintiff was attacking the application of a statute, and not the statute itself. It is clear to us, however, that in undertaking the revaluation and reassessment in 1968 of properties in nine of Indiana County's thirty-eight political subdivisions, the Indiana County Board had adopted, without statutory authorization, a system not different in kind from the triennial assessment system specifically authorized by statute for Counties of the Second Class. Here, as in Rochester, it is basically the method of assessment which is under attack. Whether that method is followed either with or without statutory authority does not alter the fact that the thrust of the attack in both cases is the same. A method of assessment may be held to be unconstitutional, without regard to whether it is fol-

lowed under color of a statute or as a matter of policy by a Board of Assessment.

"Plaintiffs cite several cases in support of their position, the most recent of which is Lynch v. Owen J. Roberts School District, 430 Pa. 461. In that case, the Court, speaking through Mr. Justice ROBERTS, said, at page 465: 'While we agree with the general proposition that equity will not entertain an action where plaintiff has an adequate, statutory remedy at law, we also acknowledge the presence of an exception to that doctrine, existing where a taxing statute is made the subject of a *constitutional* challenge.'

"Mr. Justice ROBERTS dissented in Rochester, stating that the decision in Lynch should control the decision in Rochester, and quoting the above language from Lynch. He said further: 'I can see no reason to reverse our long held position that equity has jurisdiction over constitutional challenges to tax extractions. . . . It is my conclusion that where the intrinsic constitutionality of a taxing scheme is challenged there is no reason to force that litigation into an administrative forum, and that equity ought to have jurisdiction over such cases.'

"We cannot escape the conclusion that the majority of the Supreme Court in Rochester carefully considered Lynch and the other cases cited and quoted from by Mr. Justice ROBERTS in his Dissenting Opinion in Rochester, and decided that even a direct challenge to 'the intrinsic constitutionality of a taxing scheme' is not alone sufficient to confer jurisdiction on a Court of Equity—there must also be the absence of an adequate remedy at law. That, to us, is the teaching of Rochester, where the plaintiff, in Mr. Justice ROBERTS' words, 'presented a strong constitutional challenge to the propriety' of the tax. But Mr. Justice COHEN, writing for the Court, said: 'We hold that Rochester does have [a] statutory remedy and that equity has no jurisdiction

over the matter.' We see no reason why the most recent expression of the Supreme Court, found in Rochester, is not controlling here.

"In our view, therefore, the essential question is whether the plaintiffs have an adequate remedy at law available to them. The Legislature has provided the dissatisfied taxpayer with a statutory method of determining the validity of the assessment of his property, i.e., an appeal to the Board of Property Assessment, Appeals and Review, thence an appeal to the Court of Common Pleas, and finally, an appeal to the Supreme or Superior Court. See Act of 1939, P. L. 216, §§11 and 12, as amended, 72 P.S. §§5425.11 and 5425.12; Act of 1933, P. L. 853, as amended, 72 P.S. §5020-518.1.

"The law is well settled under the Act of 1806, P. L. 558, 4 Sm. L. 326, §13, 46 P.S. §156, that where statutory remedies are provided, the procedure prescribed by the statute must be strictly pursued, to the exclusion of other methods of redress: Bliss Excavating Company v. Luzerne County, 418 Pa. 446; Commonwealth v. Glen Alden Corporation, 418 Pa. 57; Pennsylvania Life Insurance Company v. Pennsylvania National Life Insurance Company, 417 Pa. 168. However, it is important to note that those cases also state that it is equally well established that a Court of Equity has jurisdiction if the statutory remedy is not adequate, or if equitable relief is necessary to prevent irreparable harm.

"In Delaware, Lackawanna & Western R. R. Co. v. Luzerne County Commissioners, 245 Pa. 515, which was a bill in equity for an injunction to restrain the collection of a real estate tax, the Supreme Court, in affirming dismissal of the bill, said, at page 517: 'What we do decide is that every question presented for our consideration in the case at bar, can be raised on appeal from the revised assessment under the law.' That language was quoted approvingly in Bradford Township Taxpayers Protective Association v. McKean County

Board of Assessment and Revision of Taxes, 370 Pa. 468, 470-471. And in Bliss Excavating Company, supra, at pages 451-452, the Court stated the same principle in this fashion: 'The statutory procedure need not be followed only if it is inadequate to the task of resolving plaintiffs' objections or its pursuits will cause them irreparable harm. There is no question raised by plaintiffs that cannot be adequately decided at some stage of the administrative or judicial proceedings provided for by the ordinance and the statute. . . . Thus, one statutory proceeding can be utilized to dispose of all the possible questions and a proper record prepared for appellate review should that be necessary.'

"Plaintiffs first contend that their remedy at law is inadequate because defendant Board 'has no power or jurisdiction to decide the constitutionality of the underlying statute which . . . creates the Board' because such power is not included among the 'powers and duties' specifically conferred upon the Board by the Act of 1939, supra, 72 P.S. §5452.4. Plaintiffs' brief quotes from and relies heavily upon Philadelphia Life Insurance Company v. Commonwealth, 410 Pa. 571, where the Supreme Court, after listing the various separate steps in the statutory remedy there involved, stated, at page 580: 'Certainly, the Department of Revenue and the Board of Finance and Revenue are not competent tribunals to pass upon questions of the validity or constitutionality of statutes and the determination of such questions by such administrative tribunals was clearly not within the legislative purview.'

"Plaintiffs assert that the defendant Board here is likewise not a 'competent tribunal' to decide constitutional questions. However, there are essential facts which distinguish Philadelphia Life, supra, from the case at bar. There, at page 579, the Court quoted with added emphasis from Dougherty v. Philadelphia, 314 Pa. 298, 301: 'Equity has jurisdiction to restrain at-

tempted taxation for *total want of power*. . . . But, where the power to tax appears, and the complaint is *overassessment,* or *inadequate exemption,* the remedy is by appeal to the [court of] common pleas from the action of the board of revision. . . .' In Philadelphia Life the Court stated, at pages 578, 580-581:

" 'This action raises no question of an over-assessment or an improper exemption in connection with the tax nor does it challenge any of the mechanics involved in the calculation of the tax; on the contrary, it directly attacks the constitutionality of the tax statute and *the want of power in the legislature to levy such a tax.*

. . .

" 'The remedy provided by The Fiscal Code is far from being adequate where a challenge is made not to the mechanics of tax calculations but *to the power of the legislature to levy any tax* and to the validity of the statute imposing the tax.' (Emphasis added.)

"In pursuit of its remedy at law, Philadelphia Life Insurance Company would have had to proceed through several separate steps which had no relevance at all to the issue raised by its suit in equity. All those steps dealt with the procedure for ascertaining *the amount of the tax* imposed upon the plaintiff, whereas the plaintiff *denied the power of the Legislature to levy any tax.* The Court therefore permitted the plaintiff to pursue in equity its challenge to the power to tax because none of the steps outlined in the Fiscal Code impinged on the issue raised in plaintiff's case.

"The case at bar is quite different. Here, plaintiffs, of course, do not assert 'a total want of power in the Board'. The burden of their complaints is an assertion of over-assessments and a challenge to the mechanics of the assessments. It cannot be said that the Board is not a competent tribunal to pass upon the amounts of the assessments which have been made by 'the proper assessors' and filed with the Board under the provi-

sions of the law. See 72 P.S. §§5452.8, 5452.9. And because it is the amount of a property owner's assessment which is the basic issue, the Board ought to be permitted to pass upon the assessment in the first instance. It certainly cannot be stated as a foregone conclusion that the decision of the Board on appeal will be unacceptable to every appellant.

"Following the statutory remedy in the event of an appeal to the Court of Common Pleas, that Court would have before it the findings of the defendant Board and such additional evidence as may be offered. The Court could thus more efficiently pass upon the merits of the question here raised, namely, the constitutionality of the challenged assessment procedure. Indeed, as the Supreme Court said in Rochester, supra, footnote 1 at pages 508-509:

" 'Expertise in this field lies in the administrative bodies, and we should be slow, as far as jurisdiction is concerned, to favor equity courts over them.

" 'As we also stated in Y.M.C.A. (420 Pa. 595), "[t]he efficacy of the rule that a statutory remedy must be pursued, if one exists, in preference to any other proceeding is hardly questionable; its application to a tax assessment proceeding whereby those most familiar with the intricacies of tax assessments are able to review the controversy thoroughly is unquestionable."

" 'It should also be noted that the long series of real estate tax cases beginning with Morris v. Board of Property Assessment, 417 Pa. 192, 209 A. 2d 407 (1965), and continuing through H. J. Heinz Company v. Board of Property Assessment, 417 Pa. 259, 209 A. 2d 418 (1965), all came through the administrative process, and in that way it was possible to develop and resolve all the problems, *including difficult constitutional ones,* that were present in those cases. None of those cases have produced the problems that resulted from the equity decrees in Abbott Dairies and Bell Telephone.' (Emphasis added.)

"Among the difficult constitutional problems resolved through the administrative process in the cited cases in 417 Pa. was the question of uniformity, which is the precise question here raised. Thus, the fact that the defendant Board is not specifically empowered by the statute to determine constitutional questions or the fact that it is a lay, rather than a judicial tribunal, does not serve to establish the inadequacy of the remedy at law.

"Second, plaintiffs argue that if a Court of Equity does not take jurisdiction of the subject matter of this action, both the municipal plaintiffs and the individual plaintiffs will suffer irreparable harm. Counsel have agreed that approximately 11,000 appeals have been filed by taxpayers in the Southern District of Allegheny County. In addition, plaintiffs contend (and have filed an affidavit in support thereof) that 'thousands of persons' have refrained from appealing their assessments in reliance upon this equity action. Plaintiffs also point to Section 518.1 of the General County Assessment Law, Act of 1933, P. L. 853, 72 P.S. §5020-518.1, which requires the municipal plaintiffs here to segregate 25% of the taxes paid under protest by a taxpayer-appellant and to deposit that amount in a separate account, and prohibits the municipality from using any portion of such segregated amount, unless it shall first petition the Court alleging that such segregated amount is unjustly withheld. Thus, these municipal plaintiffs contend, their budgets 'are in jeopardy, if a Court of Equity does not take jurisdiction.

"We perceive no merit in this claim of irreparable harm. The number of appeals which were in fact taken and the number of taxpayers who have allegedly refrained from appealing in reliance on this equity action are irrelevant to this issue. If any single appeal at law from a Board determination of the amount of the assessment, the individual plaintiff may present the

constitutional issue to the Court. A judicial finding that the assessment statute is unconstitutional would obviate the necessity of requiring the remaining taxpayers to relitigate that question. All that would remain for determination in their cases would be the proper amounts of their assessments. And the fact, if it is a fact, that 'thousands of persons' have refrained from appealing their assessments in reliance upon this equity action obviously cannot confer equity jurisdiction if none exists. It is unfortunate that such persons were advised to ignore a clearly prescribed statutory remedy in favor of an equity action, which, at best, was of dubious efficacy.

"As to the requirement of the segregation by the municipal plaintiffs of 25% of the amount of the taxes paid under protest, plaintiffs have not made clear to us why such requirement constitutes irreparable harm to the municipalities. The statute merely requires the municipality to retain the specified percentage of taxes paid in a separate account until final disposition of the appeals. Whatever budgetary or financial adjustments must be made to fulfill this requirement certainly constitute no irresoluble problem in municipal operations. Moreover, the segregation requirement has been part of the General County Assessment Law since the passage of the amendatory Act of 1957, P. L. 581, §1. We must assume that since 1957, in at least some of the plaintiff municipalities, there have been property owners who have paid taxes under protest, thus invoking the segregation requirement. We are not aware that this has brought the operation of any municipality to a halt, or that it has even posed a serious municipal problem.

"In further support of their argument that this Court has equity jurisdiction, plaintiffs contend that the municipal plaintiffs cannot *now* intervene in any statutory appeal taken by a taxpayer. This argument,

too, is completely devoid of merit. There is no indication in plaintiffs' brief that they are aware that the law specifically gives a municipality the right to appeal the assessment of a taxpayer of such municipality *without regard to whether the taxpayer himself chooses to appeal.* Section 5 of the General County Assessment Law, as amended, 72 P.S. §5020-520, provides: 'The corporate authorities of any county, city, borough, town, township, school district or poor district, which may feel aggrieved by any assessment of any property or other subject of taxation for its corporate purposes, shall have the right to appeal therefrom to the proper board of revision court of common pleas, or to the Supreme or Superior Court, in the same manner, subject to the same procedure, and with like effect, as if such appeal were taken by a taxable with respect to his property.'

"Thus, the allegedly aggrieved plaintiff municipalities were entitled, as of right, and without the consent or joinder of the individual taxpayers, to prosecute an appeal from the assessment of any of its taxpayers. The fact that they have neglected to prosecute such an appeal, or have chosen not to do so, or that the period for an appeal has now expired, does not derogate from the fact that the right of appeal was available to them and they failed to exercise it. Jurisdiction in equity is not created because a plaintiff has slept on an adequate legal remedy which was available to him.

"Moreover, because the statute specifically affords a municipality the right to appeal an individual taxpayer's assessment, any plaintiff municipality has the right to intervene in any pending appeal taken by a taxpayer to the Court of Common Pleas, by virtue of Pa. R.C.P. 2327, which provides: 'At any time during the pendency of an action, a person not a party thereto shall be permitted to intervene therein. . . .' Thus, even if a municipality fails or neglects to take an ap-

peal to the Board in the first instance, it still has the right to intervene in an appeal pending in Common Pleas Court. This right to intervene and to argue the question of constitutionality before the Court fulfills the requirement of adequacy of the legal remedy, because the question raised by the plaintiff municipalities can be 'adequately decided at some stage of the administrative or judicial proceedings provided for by the . . . statute.' Bliss Excavating Company, supra.

"Plaintiffs' argument that equity should take jurisdiction of this case in order to avoid a multiplicity of suits is likewise without merit because it is not applicable to the case at bar. This argument is confuted by the language of the Supreme Court in Bliss Excavating Company, supra, at pages 452-453, where the Court said: 'The doctrine that equity may take jurisdiction to avoid a multiplicity of suits is inapplicable. No plaintiff need endure more than one statutory proceeding to resolve all its questions. If the provisions of the ordinance under attack are finally found invalid as to one of the plaintiffs, on the basis of any of the objections set forth above, then they will be invalid as to all the plaintiffs.'

"And in Baederwood Center, Inc. v. Putney, 390 Pa. 53, 58, the Supreme Court said: 'What is the nature of the litigation that plaintiff is desirous of averting? Actually it is not litigation which defendants might independently initiate, but rather appeals from the grant of building permits taken by defendants as parties who consider themselves "aggrieved . . . by any decision of the administrative officer," There are no independent vexatious suits here indicated, only "appeals"—which must be prosecuted under the statute with reasonable promptness—and these have specifically been permitted by the Legislature.'

"We note, in passing, that in Bliss Excavating Company, supra, at page 452, the Supreme Court also said:

'The suggestion by plaintiffs that the statutory procedure is "cumbersome and wasteful of time," even if true, does not demonstrate irreparable harm so as to obviate the requirement that legislatively prescribed procedures be strictly pursued. See Commonwealth v. Glen Alden Corporation, supra.'

"Plaintiffs next urge that the Board, which 'was originally responsible for the policies and the manner of assessments in the first instance', cannot be expected to be an impartial tribunal, and that the remedy at law therefore is inadequate. In effect, this argument requests that we hold, prior to any hearing by the Board, that the Board, as a matter of law, is a biased tribunal. Plaintiffs have not furnished the Court with any authority, and we are certain that there is none, which would warrant our holding, in vacuo, that a tribunal designated by statute to hear an appeal is disqualified, because of bias, from performing its statutory function. In addition, the right of a taxpayer to a de novo hearing on appeal to the Court dispels whatever taint might occur if, in fact, it could be proved that the Board was biased. The principle applied by the Court in Brentwood Borough School District Appeal, 439 Pa. 256, 263, is applicable here: 'By providing in §1132(b) for a de novo hearing by request in the court of common pleas as part of the appeal from the decision of the Superintendent, the legislature has given the employee the opportunity for a hearing in a forum free of any bias. . . . The opportunity for a de novo hearing before the court must be taken as the exclusive remedy when an employee contends that the board's bias and prejudice has deprived him of a fair hearing.'

"Equally unavailing is plaintiffs' argument that their remedy at law is inadequate because discovery procedures and the right to subpoena witnesses are not available to them in an appeal to the Board. The obvious answer to this argument is that on an appeal

from the Board to the Court the appellant is entitled to a plenary de novo hearing, at which level discovery, the right to subpoena witnesses, and all other rights incident to a judicial proceeding are available to him.

"Plaintiffs contend that Section 17 of the Second Class County Assessment Law, 72 P.S. §5452.17, as amended by Act No. 138, approved June 22, 1970, is unconstitutional because (1) it is violative of due process in requiring payment of taxes 'on unconstitutional assessments' before a final review by the Board and by the Courts, and (2) in providing that interest commencing one year after the date of payment of taxes be included with the refund of excess taxes, it 'creates an unreasonable classification of taxpayers in Allegheny County as compared with taxpayers in other counties.'

"In the first prong of this argument, plaintiffs rely on Pennsylvania State Chamber of Commerce v. Torquato, 386 Pa. 306. In that case the Court struck down, as violative of due process, the provision of the Unemployment Compensation Law that an appeal from the Board to the Superior Court 'shall not act as a supersedeas,' which was 'a statutory provision which directs that unemployment compensation in large amounts shall be made to claimants before the validity of their claims to such payments are or may be determined by a Court. . . .' On the facts of that case, the Supreme Court held that equity had jurisdiction to enjoin the payment of 276,000 claims for unemployment compensation until a decision on the merits by the Superior Court, because, inter alia, 'it is conceded that if unemployment compensation payments are made to the claimants they will never be recovered.' Thus, the Court's decision in Torquato was bottomed on the *certain* loss of plaintiffs' property rights in the Unemployment Compensation Fund which would have resulted had the Superior Court ultimately rejected the claims on their merits.

"Torquato is no analogue to the case at bar for the simple reason that the Legislature has clearly and unequivocally provided that, following a final decision on a taxpayer's assessment, any excess taxes collected shall be refunded to him. There is therefore no permanent deprivation of a taxpayer's property, as was immediately threatened in Torquato, and therefore no violation of due process.

"Entirely aside from the inappositeness of Torquato, we find it odd that plaintiffs' brief lays great stress on an argument which was laid to rest by the Supreme Court many years ago, namely the argument of lack of due process in the requirement that taxes be paid 'before a final review' by the Board and by the Courts. The Act of 1889, P. L. 37, a precursor of the present Assessment Law, contained the identical language now found in Section 518.1 of the General County Assessment Law, 72 P.S. §5020-518.1: 'Provided, however, that the said appeal shall not prevent the collection of the taxes complained of, but in case the same shall be reduced, then the excess shall be returned to the person or persons who shall have paid the same.' In upholding the constitutionality of that Act, the Supreme Court in Rockhill Iron & Coal Company v. Fulton County, 204 Pa. 44, 47-48 (1902), said: 'The moment taxes within the territorial limits of a county are not uniform on the same class of subjects, the non-uniformity results in injustice to the taxpayer whose valuation is placed above that of his neighbor; the imperative necessity for prompt payment gives the complaining taxpayer but one remedy, and that is through appeal to the courts from the assessment or valuation; the very law which gives the appeal, directs immediate payment, and then refunding of the excess collected if the appeal be successful. He cannot resist or delay by litigation the tax collector, who attempts to levy what the taxpayer thinks is an unjust tax. His one and only

remedy against unjust and discriminating taxation is the one pointed out by the acts of assembly referred to. . . .'

"The Act of 1889 was again discussed by the Supreme Court in H. C. Frick Coke Company v. Mount Pleasant Township, 222 Pa. 451 (1909), where the Court said, at page 457: 'While the act of 1889 authorizes an appeal to the common pleas from the final adjudication of the board of revision, the appeal is not a supersedeas and does not prevent the collection of the tax. If the valuation is reduced, the excess of taxes is returned to the person who paid them.' In Kaemmerling v. The New Castle Township School District, 297 Pa. 44 (1929), the Court said, at page 46: 'The constitutionality of the Act of 1889 cannot at this late day be successfully challenged. . . .' And in Philadelphia & Reading Coal & Iron Co. v. Tamaqua Borough School District, 304 Pa. 489 (1931) (cited in Rochester, supra, at page 510), it was said, at page 493: 'The constitutionality of the Act of 1889, P. L. 37, is no longer open to question. . . .'

"The second prong of this argument raises the question of the unconstitutionality of the provision in the 1970 amendatory Act regarding the payment of interest on refunds after one year. Plaintiffs ask us to declare this Act unconstitutional. It is obvious that the question of interest on tax refunds is not ripe for determination until it is determined that a taxpayer is entitled to a refund. That posture has not yet been attained by any of the plaintiffs here. It is clear to us that what the Court said in Rochester, supra, at page 510, is applicable here: 'It is not necessary to determine at this time as to what period interest may be collected. . . . That problem will be faced if and when the courts have decided that Rochester is entitled to a refund.' We also point to the language in Shuman v. Bernie's Drug Concessions, 409 Pa. 539, 545: 'In accordance with the familiar principle that a court will not decide

a constitutional question unless it is absolutely required to do so, we refrain from considering the problem at this time.' This principle was more recently reaffirmed in Lynch, supra, footnote at page 465. If the Supreme Court in Rochester saw no reason to determine the question on a refund[1] in passing on the adequacy of plaintiff's legal remedy, that view should apply a fortiori to the instant case. We are not persuaded that this Court ought to tread in a path which the Supreme Court has eschewed.

"We cannot refrain from noting the following peroration contained in plaintiffs' brief '. . . it must be said that the citizens of Allegheny County have no confidence in or any respect for the assessment system as it prevails. The public must look to this Court for correction of the evils that are attendant with the system.'

"We do not know whether plaintiffs' counsel speaks with authority as to the attitude of the citizenry of Allegheny County toward the assessment system.[2] However, it must be said that the quoted statement can hardly be considered a legal argument. Whether the citizens have confidence in or respect for the present assessment system is not an issue in this proceeding. The only issue at this point is whether equity has jurisdiction. To reach a determination of that question, we must be guided by our understanding of the law as it has been enunciated by the highest Court in the Commonwealth, and not by anyone's assessment of the attitude of the citizenry toward the system here under attack.

---

"[1] It is noteworthy that in his Dissenting Opinion in Rochester Mr. Justice ROBERTS made no mention of the refund question.

"[2] According to Exhibit 'A' attached to one of the complaints, 58 municipalities comprise the 'Southern District' of Allegheny County. Sixteen of those 58 municipalities are parties plaintiff in this proceeding.

"We are satisfied that the remedy at law in the form of a statutory appeal to the Board and thence to the Courts, which remedy is available or was available—had they chosen timely to pursue it—to the municipal plaintiffs, to the individual plaintiffs, and to all real estate taxpayers who felt aggrieved by the actions of the Board, is an adequate remedy. And where an adequate remedy at law exists, irreparable harm, which is its direct antithesis, does not: Mead Johnson & Company v. Martin Wholesale Distributors, Inc., 408 Pa. 12, footnote at page 16.

"As we view these cases, they lie within the ambit of the Supreme Court's Opinion in Rochester, and we must therefore dismiss these complaints for lack of jurisdiction of this Court of Equity over the subject matter.

ORDER OF COURT

"Now, October 6, 1970, after argument, and upon consideration thereof and of the briefs of counsel, both complaints are dismissed for lack of jurisdiction over the subject matter thereof.

BY THE COURT:

(s) OLBUM, J."