442 A.2d 1189

**William B. WILSON, Appellant,**

v.

**Judith G. WILSON.**

**William B. WILSON, a/k/a William Barnard Wilson**

v.

**Judith G. WILSON, a/k/a Judith Gonczo Hinckley Wilson, Appellant.**

Superior Court of Pennsylvania.

Argued Dec. 2, 1980.

Filed Sept. 4, 1981.

Reargument Denied April 8, 1982.

Petition for Allowance of Appeal Denied June 16, 1982.

Walter T. ReDavid, Media, for appellant (at Nos. 169, 1743/1746) and for appellee (at No. 2200).

Timothy F. Sullivan, Media, for appellant (at No. 2200) and for appellee (at Nos. 169, 1743/1746).

Before PRICE, WATKINS and MONTGOMERY, JJ.

MONTGOMERY, Judge:

We have before us six appeals, all arising from a divorce proceeding filed under the Divorce Law of May 2, 1929, P.L. 1237, as amended, 23 P.S. § 1 et seq. (now repealed) by William B. Wilson (Husband) against Judith G. Wilson (Wife). They have been consolidated for disposition purposes.

Appeal No. 2200 October Term, 1979 was taken by the husband from orders of. the lower court (Levy, J.) dated September 27, 1979, denying his petition to reduce an award to the wife of $1800.00 per month as alimony pendente lite which had previously been entered by stipulation of the parties, and another order of the same date allowing additional counsel fees and expenses to wife's counsel.

Appeal No. 1745 Philadelphia, 1980 was taken by the wife from an order of the lower court (Prescott, J.) dated June 27, 1980, and entered June 30, 1980, dismissing her exceptions to the report of the Master in Divorce.

Appeal No. 1746 Philadelphia, 1980 was taken by the wife from the final decree in divorce granted June 30, 1980, by the lower court (Prescott, J.).

Appeal No. 1743 Philadelphia, 1980 was taken by the wife from the order of the lower court (Prescott, J.) dated July 18, 1980, denying her Petition for Reconsideration, Vacation of Final Decree and Recusal of Judge Prescott.

Appeal No. 1744 Philadelphia, 1980 was taken by the wife from an order (DeFuria, J.) dated July 21, 1980, denying her Petition for Certification of the Action for Disposition under the New Divorce Code, Act of April 2, 1980, P.L. 63, Act No. 26, 23 P.S. § 101 et seq., and for a stay of proceedings.

Appeal No. 169 Philadelphia, 1981 was taken by the wife from an order (Reed, J.) entered January 9, 1981, granting husband's Petition to Terminate the Alimony Pendente Lite payments and denying wife's Petition for Contempt.

The basic issue is, of course, the propriety of the decree in divorce A.V.M. granted to the husband on the grounds of indignities to his person. After reviewing over a thousand pages of testimony and numerous depositions, the Master had recommended such a decree. After hearing arguments and considering briefs on eighty-two exceptions filed by the wife to the report of the Master, a court en banc consisting of the Honorable Rita J. Prescott and the Honorable Clement J. McGovern heard arguments on the exceptions on December 22, 1979.

Due to the pendency of the husband's appeal from the order refusing to reduce his alimony pendente lite payments, and the order granting additional counsel fees and expenses, disposition of the exceptions was delayed from December 22, 1979, until June 27, 1980, when they were dismissed. A final decree in divorce was entered June 30, 1980, one day before the effective date of the new Divorce Code, P.L. 63, Act 26, approved April 2, 1980, 23 P.S. § 101 et seq.

In the opinion dismissing the exceptions authored by Judge Prescott for the court en banc, (the concurrence of Judge McGovern is not shown) it is stated "Because of an unrelated aspect of this case, the record papers of the case were forwarded to the Superior Court of Pennsylvania, thus delaying a disposition of the Defendant's Exceptions. On June 20, 1980, the record papers were returned to this court and this opinion is now written in disposition of the Defendant's Exceptions." As further enlightenment on this point, we note from the reproduced record (R. 1495a) the Judge Prescott advised counsel by letter dated June 4, 1980, that the Master's Report and the exceptions thereto were in the Superior Court, and the lower court was without authority to act on the exceptions without them. We also note that at the time this letter was sent, there was in effect an order signed by the Honorable Howard Reed, Jr., Judge, dated March 24, 1980, staying the entry of a final decree in divorce until the husband became current in his payments of alimony and counsel fees, etc.

How this record came into the hands of Judge Prescott after it had been filed in the Superior Court on February 26, 1980, is explained by Judge Prescott in the following manner (R. 1518a): "I told him (Mr. ReDavid, counsel for wife) that I had just talked with the clerk at the Superior Court and made arrangements to have the record transported to me. Actually, I didn't know until your petition was filed that Mr. Sullivan had brought the record. All I know is that when I came in the next morning, I saw a big box, which you say is a voluminous record, and that was the record of *Wilson v. Wilson*, and we went to work." Why Mr. Sullivan retained it in his possession from June 12 to June 20 is not explained.

A check of our records in the Superior Court discloses no petition or order to remand this record to the lower court for any purpose. Had there been such authorization or order, the record would have been returned to the clerk of that court and not delivered to counsel for one of the parties or directly to Judge Prescott. Miss Casiello, a clerk in the Prothonotary's Office, who was called by Mr. Sullivan, attor-

ney for the husband, to testify at a hearing before Judge Prescott on July 18, 1980, on the wife's Petition for Reconsideration, Vacation of Final Decree and Recusal of Judge Prescott, stated (R. 1552a et seq.) that she received a call from Judge Prescott who inquired whether she could borrow a record that the court had and that the attorney for the plaintiff (husband) would give her the necessary information, that Mr. Sullivan gave that information and offered to pick up the record, which he did. The records in the Office of the Prothonotary show he received the record on June 12, 1980, eight days before Judge Prescott received it. Miss Casiello stated further that this was an unusual practice and that normally records were sent to the Clerk of the Court. Furthermore, there is no record of the return of this record by Judge Prescott as required by Pa. R.A.P. 3114.

Rule 3114 prescribes the procedure for the control of original papers on file with the appellate courts.

Rule 3114. Original Papers

No original record or paper shall be taken from its appropriate place among the records or files of an appellate court, without a written order from a judge of the court, or from the prothonotary or other authorized officer, and the giving of a written receipt therefor. If such order is given, the officer permitting the record or paper to be removed shall see that it is returned immediately on the expiration of the time specified in the order, or within one day after it is taken out, if no time is specified therein.

Although Judge Prescott, in her opinion, says that the appeal from the order dismissing the husband's petition for a reduction in his alimony payments and allowing additional counsel fees to wife's attorney is an *unrelated aspect* of the case which caused the record to be forwarded to the Superior Court, we do not agree that the issue before the Superior Court was unrelated to the divorce proceeding.

From the early stages of these proceedings, the matter of alimony and counsel fees was closely related to the divorce sought by the husband. As early as June 13, 1978, when Judge Levy ordered the husband to pay temporary alimony

pendente lite, he also ordered the Master, who had previously been appointed to hear testimony and make a recommendation, *not* to proceed with the hearings until further order of court. Thereafter, on July 14, 1978, the Master was ordered to proceed. Again, on March 13, 1979, all proceedings in the divorce action were stayed because of husband's arrearages in his payments of alimony. On May 2, 1979, after the husband had paid those arrearages at a hearing, Judge Levy made an order for the Master to proceed. On September 27, 1979, Judge Levy signed the orders from which the husband, on October 25, 1979, took the appeal (2200 October, 1979) previously described. Thereafter, on November 7, 1979, the Master filed his report to which the wife filed exceptions on November 15, 1979.

On February 26, 1980, the record of the lower court, including the Master's Report, the wife's exceptions and twenty-eight volumes of testimony and exhibits, was certified by the lower court and transmitted to the Prothonotary of the Superior Court where it remained intact until June 12, 1980, when it was delivered to Mr. Sullivan in the manner previously described by Miss Casiello.

One other matter which is significant is the order of Judge Reed, previously mentioned, staying the grant of a decree in divorce until the husband paid the arrearages then due in the amount of $22,000.00 or more.

If we were to agree with Judge Prescott that the matter of alimony and counsel fees was unrelated to the divorce, we would be ignoring the true facts in this case.

Although we have said that the matter of alimony pendente lite is collateral to the divorce proceeding, the merits of which are not involved in the alimony matter, *Brady v. Brady*, 168 Pa.Super. 538, 79 A.2d 803 (1951), we have also recognized that the purpose of temporary alimony is to enable a wife to maintain or defend the principal action and to meet her expenses in connection with the litigation. *Oswald v. Oswald*, 263 Pa.Super. 85, 397 A.2d 7 (1979). Were we to adopt the statement of Judge Prescott that alimony pendente lite and counsel fees were unrelated to the

divorce action, it would create just such a situation as the present case, where the husband, by his appeal and failure to make the payments he was ordered to pay, could deprive his wife of the financial means to defend the divorce action with which he was proceeding. This would be most unjust.

Judge Prescott recognized the relationship of the two matters when she wrote her letter of June 4, 1980. Had the lower court thought otherwise, it could have availed itself of the privileges of Section (b)(2) of Pa. R.A.P. 1932[1] and reserved the right to retain part of the record for its use during the pendency of the appeal, which it did not do. Instead, it certified the entire voluminous record to the appellate court.

Another fact of significance on this point is that the husband tendered a check for his arrearages in full (except some disputed medical claims) at or shortly before the hearing conducted before Judge Reed on June 27, 1980, so that the stay provided for in Judge Reed's order of March 24, 1980, could be lifted and no longer be a bar to the entry of a decree in divorce. The reason for this action is apparent. It was for the purpose of overcoming any effect the New Divorce Code might have on these proceedings. The denial of the wife's petition for certification was for one reason alone, the entry of the decree in divorce on June 30, 1980, one day before the new law became effective.

Rule 1701 of the Rule of Appellate Procedure expressly limits the power of a lower court after an appeal has been filed in a case:

Rule 1701. Effect of Appeal Generally. (a) General Rule. Except as otherwise prescribed by these rules, after an appeal is taken or a petition for allowance of appeal is

---

1. The pertinent portion of Rule 1932 provides: "(b)(2) If the record or any part thereof is required in the lower court for use there pending the appeal, the lower court may make an order to that effect, and the clerk of the lower court shall retain the record or parts thereof subject to the request of the appellate court, and shall transmit a copy of the order and of the docket entries together with such parts of the original record as the lower court shall allow and copies of such parts as the parties may designate."

filed in a matter or review of a quasi-judicial order is sought, the lower court or other government unit may no longer proceed further in the matter.

We are aware that subsection (c) of Rule 1701 limits the application of the rule to matters in dispute as did the earlier statute, Act of May 19, 1897, P.L. 67, No. 53, 12 P.S. § 1154, which permitted the lower court to proceed after an appeal was taken in a case "in anything not affected by the subject matter of the appeal."[2] The rule now provides:

where only a particular item, claim or assessment adjudged in the matter is involved in an appeal, . . . the appeal . . . shall operate to prevent the lower court . . . from proceeding further with only such item, claim or assessment . . . . Pa. R.A.P. 1701(c).

As previously stated, the present situation does not come within the exception to the general rule. This holding is consistent with prior decisions of this court. In *Wolfe v. Wolfe*, 202 Pa.Super. 70, 195 A.2d 272 (1963), we held that the lower court could not proceed with the cause in divorce after an appeal had been taken. See also *Commonwealth ex rel. Podvasnik v. Podvasnik*, 198 Pa.Super. 107, 181 A.2d 843 (1962).

We find nothing in *Commonwealth v. Scholl*, 156 Pa.Super. 136, 39 A.2d 719 (1944) or in *White v. White*, 106 Pa.Super. 85, 161 A. 464 (1932) to the contrary. In these cases, the holding was that even in the face of an appeal in a divorce proceeding, a lower court, whether the Common Pleas or the Quarter Sessions, still had a right to provide sustenance for the wife so as to prevent her from becoming a public charge; or to enforce a prior order made for alimony pendente lite or counsel fees.

2. There are a legion of cases under the common law and the 1897 statute adhering to the general rule and placing very limited authority in the hands of the lower court after an appeal has been taken in a case. *Corace v. Balint*, 418 Pa. 262, 210 A.2d 882 (1965); *Kingsley Clothing Mfg. Co. v. Jacobs*, 344 Pa. 551, 26 A.2d 315 (1942); *Commonwealth ex rel. Logan v. Toomey*, 241 Pa.Super. 80, 359 A.2d 468 (1976); *Weise v. Goldman*, 229 Pa.Super. 187, 323 A.2d 31 (1974); *Commonwealth ex rel. Dustin v. Hiepler*, 209 Pa.Super. 513, 228 A.2d 671 (1967).

22

Likewise in *Commonwealth ex rel. Brown v. Brown*, 254 Pa.Super. 410, 386 A.2d 15 (1978), we find no conflict with our views taken in the present case. Therein, as in *Scholl*, we recognized the right of the lower court to provide for a wife, or terminate her rights as the case might require after a decree in divorce had been entered by it and was the subject of the appeal. However, in that case, no order terminating the husband's support obligation had been entered while the appeal was pending.

■ Furthermore, the fact that the Prothonotary of the Superior Court or his clerk, responded to a request made by Judge Prescott and permitted the withdrawal of the record, could not enlarge her Court's jurisdiction over the case. The record was borrowed by Judge Prescott not remanded to her Court. Therefore, we must conclude that the receipt of the physical record by Judge Prescott did not bestow upon her Court any jurisdiction over this case which it did not otherwise have. This record, since February 26, 1980, when it was filed with the Prothonotary of the Superior Court, had been in the complete control of that court which continued to have jurisdiction over it until disposition is made of the appeal of which it is a part, *viz* 2200 October Term, 1979, and thereafter until it is remanded in a proper manner to the court below. That appeal was listed for argument before a panel of this court on September 10, 1980, which would have required the presence of the record. At that time, it was continued for argument in December 1980 when it was argued in consolidation with all the other appeals before us except 169 Philadelphia 1981 which was not argued orally but submitted on briefs.

The record was finally returned to the Superior Court sometime after July 21, 1980, on which date the appeals at 1743, 1744, 1745 and 1746 Philadelphia 1980 were filed, and it was returned as an enlarged record, containing the additional proceedings in the lower court, being again certified and transmitted by the Deputy Prothonotary of the lower court. Thus, it appears that it was filed by either Judge Prescott or Judge DeFuria with the Prothonotary of their Court and not

returned to the Prothonotary of the Superior Court in the manner prescribed by Rule 3114.

■ We are, therefore, led to the inevitable conclusion that all proceedings in the lower court after February 26, 1980, when the record was lodged in the Superior Court, are null and void for lack of jurisdiction in the lower court to proceed with this matter after that date.

■ Although the question of remaining jurisdiction in the lower court was not directly raised by the wife, she does raise it indirectly by her claim of denial of due process and reference to the irregular procedure followed in this case. However, lack of jurisdiction may be raised by the appellate court sua sponte. *Daly v. School Dist.*, 434 Pa. 286, 252 A.2d 638 (1969). *Commonwealth v. Orsatti, Inc.*, 448 Pa. 72, 292 A.2d 313 (1972), *Crafton v. Board of Property Assess., App. & Rev.*, 7 Pa.Cmwlth. 291, 298 A.2d 643 (1972), *rev'd on other grounds, Greentree v. Board of Property Assess., App. & Rev.*, 459 Pa. 268, 328 A.2d 819 (1974).

We do exercise that right in this case for the reasons hereinbefore described.

The wife's appeal at 1745 Philadelphia, 1980 from the order dismissing her exceptions to the Master's Report is sustained and that order reversed.

The wife's appeal at 1746 Philadelphia, 1980 from the decree in divorce is sustained and the decree vacated.

The wife's appeal at 1744 Philadelphia, 1980 from the order of Judge DeFuria denying her petition for certification under the Divorce Code of 1980, P.L. 63, Act 26, approved April 2, 1980, 23 P.S. § 101 et seq., is sustained and that order vacated without prejudice to wife's right to renew such petition upon the return of the record to the lower court.

The wife's appeal at 169 Philadelphia, 1981 terminating the alimony pendente lite payments is sustained and that order vacated without prejudice to the husband to renew his petition; and further, that part of the order denying wife's petition for contempt is also vacated without prejudice to

her to renew it if any payments to which she may be entitled are not made during the future course of these proceedings.

Returning to the initial appeal of the husband at 2200 October, 1979, we have examined the record and are in complete accord with the findings of Judge Levy. There was not a sufficient change in the financial situation of the parties between the time the order of July 14, 1978, was entered by stipulation and the time of the depositions on which the order of September 27, 1979, were based, to justify a change in the order. We, therefore, affirm the order refusing to decrease the alimony pendente lite payments the husband was ordered to pay.[3] As to the allowance of counsel fees, we will not determine the question of error in the amount stated in that order inasmuch as this matter will, of necessity, involve more services on the part of the wife's counsel which will compel a reconsideration of this allowance. Any error in the order of September 28, 1979, may be corrected in considering any future petition for such allowances that may be presented.

The orders of Judge Levy dated September 27, 1979, are therefore affirmed.

In view of the conclusions reached, as hereinbefore expressed, we will not pass on the other assignments of error on which the wife-appellant relies.

It is further ordered that upon remand of this record, that a new court en banc consisting of members of the lower court other than those who constituted the original court en banc be assigned to hear arguments on and dispose of wife's exceptions to the Master's Report, and that thereafter these proceedings proceed in a manner consistent with this opinion.

This panel does not retain jurisdiction of this matter.

3. It appears the husband ignored his appeal and abided by this order when he hastily paid his arrearages on June 27, 1980, in order to lift this stay, covered by the order of Judge Reed as previously mentioned.