In the Matter of the Tax Appeal of SIMPSON MANOR, INC., Taxpayer

NO. 5529

APRIL 2, 1976

RICHARDSON, C.J., KOBAYASHI, OGATA, MENOR, JJ., AND CIRCUIT JUDGE SHINTAKU ASSIGNED BY REASON OF VACANCY

OPINION OF THE COURT BY RICHARDSON, C.J.

Taxpayer-appellant initiated this action in Tax Appeal Court for the purpose of appealing an excise tax assessment. Taxpayer refused to pay the assessment prior to commencement of the action, despite the fact that HRS § 237-42 expressly requires such prepayment:

> "Any person aggrieved by any assessment of the [excise] tax . . . may appeal from the assessment in the manner . . . and in all other respects as provided in the case of income tax appeals by section 235-114, *provided the tax so assessed shall have been paid.*" (Emphasis added.)

Because taxpayer failed to satisfy the prepayment requirement, the Tax Appeal Court dismissed taxpayer's action for lack of jurisdiction. Taxpayer appeals, asserting that the prepayment requirement is unconstitutional on three separate grounds. First, taxpayer argues that, in conjunction with other statutes imposing pre-hearing tax liens and permitting summary distraint for delinquent tax payments, the prepayment requirement deprives taxpayer of property without due process of law. Secondly, because persons contesting net income tax and real property tax assessments are allowed to appeal without first paying disputed taxes, equal protection is allegedly denied by requiring prepayment in the case of excise taxpayers. Third, it is argued that the prepayment requirement infringes a constitutional right of access to the courts. However, it is clear from taxpayer's briefs that it is not asserting a right to be heard in any specific forum (*e.g.,* the

Tax Appeal Court or the district boards of review). Rather, taxpayer is simply demanding a judicial or quasi-judicial hearing which is not conditioned on prior payment of the disputed taxes.

A major weakness in the posture of taxpayer's appeal is taxpayer's failure to seek a hearing in the court of general jurisdiction, the circuit court. Taxpayer categorically states that it cannot obtain a hearing prior to payment of the disputed assessments. Yet taxpayer has failed to point to any statute which clearly prevents the circuit court from hearing taxpayer's case prior to payment. The prepayment requirement in § 237-42, *supra,* appears on its face to apply only to the types of appeals provided for in HRS § 235-114, *i.e.,* appeals to the Tax Appeal Court and the district boards of review. Taxpayer cites HRS § 237-37 as barring a circuit court action in the instant case,[1] but a closer reading of that section shows that it applies only where disputed assessments have already been paid and a refund is being sought. Nor has taxpayer cited any statute or case law which gives the Tax Appeal Court and the district boards of review exclusive original jurisdiction of all tax disputes.[2] On the other hand, the State cites a recent circuit court case, *Hawaii Meat Co. v. Kondo,* Civ. No. 24475 (1st Cir., decided April 22, 1969), holding that circuit courts do have equity jurisdiction to hear excise tax disputes prior to payment of the disputed taxes where the taxpayer can show that prior payment "would destroy its business, ruin it financially and inflict loss for which it would have no adequate remedy at law."[3] In the instant case, taxpayer clearly does not meet the criteria for equity jurisdiction enunciated in *Hawaii Meat Co.,* and thus it may well be that if taxpayer had attempted to obtain a hearing in circuit court the hearing would have been denied.

---

[1] The section provides in part: "As to all tax payment for which a refund or credit is not authorized by this section . . . the remedies provided by appeal or under section 40-35 are exclusive."

[2] However, HRS § 632-1 (1975 Supp.) and H.R.C.P. Rule 57 provide that declaratory relief may not be obtained in tax disputes.

[3] *Hawaii Meat Co.,* Findings of Fact and Conclusions of Law at 15.

Nevertheless, this court does not normally decide cases by (1) first deciding how a lower court probably would have ruled on a case and (2) then deciding whether or not the lower court's ruling would have been error. Taxpayer has failed to establish its basic allegation that it is in fact presently barred from obtaining a hearing prior to payment of the taxes. Therefore, whether or not such a bar would be constitutional is not before this court. This is sufficient reason to dismiss taxpayer's appeal.

However, in order to avoid future appeals, this opinion will address itself to the constitutional issues briefed by the parties. Assuming arguendo that taxpayer would be denied a hearing in circuit court, it seems clear to this court that requiring a prior payment of disputed assessments is constitutional, at least when, as here, the taxpayer is notified of the proposed assessment, then given 30 days during which he may contest the assessment in administrative conference with the department of taxation, and then allowed an additional 20 days before tax payment is due.[4] Prior payment of the taxes is a prerequisite only to hearings in the Tax Appeal Court and the district boards of review, and is not a prerequisite to administrative conference with the department of taxation. Such a scheme of tax appeals satisfies due process; does not work an invidious discrimination against excise taxpayers; and does not deny taxpayers reasonable access to the courts.

### DUE PROCESS

Taxpayer contends that the prepayment requirement in § 237-42, in conjunction with other statutory provisions authorizing pre-hearing tax liens[5] and pre-hearing summary constraint for collection of delinquent taxes,[6] deprives taxpayer of property without due process of law. Taxpayer argues that recent Supreme Court decisions mandate that taxpayer be given notice and an opportunity for a hearing before

---

[4] HRS § 237-36.
[5] HRS § 231-33(b).
[6] HRS § 231-25.

tax liens are imposed and before delinquent taxes are summarily collected. Taxpayer relies especially on *Fuentes v. Shevin*, 407 U.S. 67 (1972), which held that summary, ex parte replevin of consumer goods without notice or opportunity for prior hearing violates due process in the absence of appropriate safeguards.[7] *Fuentes*, however, is clearly distinguishable from the instant case. In *Fuentes*, the debtor was given notice or opportunity to be heard prior to seizure, whereas taxpayers are given notice of proposed assessments and opportunity to informally contest them prior to final assessment. Except in the case of jeopardy assessments (which taxpayer concedes to be constitutional), summary collection of taxes is permitted only after the tax due date, which falls 20 days after the final notice of assessment is mailed out. The procedural safeguards in the instant case, including notice, an opportunity to be heard informally, and a 50-day period between the notice of proposed assessment and the tax due date, contrast sharply with the summary seizure in *Fuentes*.

Moreover, *Fuentes* acknowledged that there are situations, involving important governmental interests, in which the postponement of notice and hearing is justified. 407 U.S. at 90-91. The Court noted that summary seizure of property for the collection of taxes had been approved in *Phillips v. Commissioner*, 283 U.S. 589 (1931), based on "'the need of the government promptly to secure its revenues.'" *Id.* at 91-92, 92 n. 24.

In *Phillips* the Supreme Court had upheld the jurisdictional requirement that a bond be posted on appeals to the federal courts of appeal from the Board of Tax Appeals (now the Tax Court). However, the language and reasoning of *Phillips* embraced much more than the bond requirement issue. Justice Brandeis, speaking for the Court, broadly stated:

---

[7] *Cf.* Mitchell v. W. T. Grant Co., 416 U.S. 600 (1974), upholding the constitutionality of ex parte, summary seizure of consumer goods, without notice or prior hearing for the debtor, where the seizure was approved in advance by a court upon submission of affidavits, seizure was to be followed immediately by a full court hearing, and other procedural safeguards were present.

"The right of the United States to collect its internal revenue by summary administrative proceedings has long been settled. Where . . . adequate opportunity is afforded for a later judicial determination of the legal rights, summary proceedings to secure prompt performance of pecuniary obligations to the government have been consistently maintained." 283 U.S. at 595.

"[T]he right of the United States to exact immediate payment and to relegate the taxpayer to a suit for recovery, is paramount." *Id.* at 599.

*Enochs v. Williams Packing & Nav. Co.*, 370 U.S. 1 (1962), further supports the proposition that the postponement of tax hearings until after payment is justified. *Enochs*, while not directly addressing constitutional issues, strictly enforced the federal anti-injunction tax act, which prohibits federal courts from entertaining suits to enjoin the assessment or collection of federal taxes. The Court also discussed the related federal act which prohibits federal courts from enjoining the assessment and collection of state taxes where adequate legal or equitable remedies are available in state court, and quoted with approval from a 1937 Senate committee report favoring passage of that act:

"'The existing practice of the Federal courts in entertaining tax-injunction suits against State officers makes it possible for foreign corporations doing business in such States to withhold from them . . . taxes in such vast amounts and for such long periods of time as to seriously disrupt State and county finances. *The pressing needs of these States for this tax money is so great that in many instances they have been compelled to compromise these suits,* as a result of which substantial portions of the tax have been lost to the States . . . .'" 370 U.S. at 7, n. 6 (emphasis added).

In 1974, in *Bob Jones University v. Simon*, 416 U.S. 725, the Court again literally construed the federal anti-injunction tax act, finding that taxpayers are barred from bringing suit to enjoin the Internal Revenue Service from withdrawing an

organization's tax-exempt status. Speaking of "the powerful governmental interests in protecting the administration of the tax system from premature judicial interference" (416 U.S. at 747), the Court found that delay in judicial review of the IRS action did not violate due process. The Court also approved the following broad language from *Dodge v. Osborn*, 240 U.S. 118 (1916):

> ""There is a contention that the provisions requiring an appeal to the Commissioner of Internal Revenue *after payment of the taxes* and giving a right to sue in case of [the Commissioner's] refusal to refund are wanting in due process . . . . But we think it suffices to state that contention to demonstrate its entire lack of merit."" 416 U.S. at 746 n. 20 (emphasis added).

Although it is true that, since 1924, the federal tax system has allowed taxpayer suits in the Tax Court (or the predecessor Board of Tax Appeals) without prior payment of disputed taxes,[8] it seems clear from the above cases that the Supreme Court would find that Hawaii's interest in the prompt collection of taxes outweighs the individual taxpayer's interest in a formal hearing prior to tax payment, so that due process is satisfied by the taxpayer's right to bring a suit for refund, at least where, as here, the taxpayer is first notified of the proposed assessment and given an opportunity to confer with the tax department before the final assessment.[9]

Recent state court decisions agree that it is constitutional to require that taxes be paid before a formal hearing is

---

[8] Old Colony Trust Co. v. Comm'r. 279 U.S. 716. 721 (1929); 26 U.S.C. § 6213(a) (1970). However. prior payment of taxes is a prerequisite to suit in the district courts or the Court of Claims. 28 U.S.C. §§ 1346(a)(1), 1491 (1970).

[9] Taxpayer also cites Bell v. Burson, 402 U.S. 535 (1971), for the proposition that a hearing must be given before a state deprives a citizen of any significant property interest or right. In *Bell*, a state statute had provided for automatic suspension of a driver's license for involvement in a car accident, regardless of fault or likelihood of liability, unless the driver could prove ability to pay for all damage claims arising out of the accident. *Bell* is not on point, because the due process infirmity there was the blanket prohibition of consideration by anyone (whether state administrative officer or state judge) of the driver's possible liability or fault. In the instant case. the department of taxation is obviously not prohibited from considering whether or not the proposed assessment is correct.

granted: *Korzen v. Hutter*, 27 Ill. App. 3d 634, 327 N.E.2d 138
(1975); *County of Sacramento v. Assessment Appeals Board*,
32 Cal. App. 3d 654, 671, 108 Cal. Rptr. 434, 446-47 (1973);
*Pacific Motor Transport Co. v. State Board of Equalization*,
28 Cal. App. 3d 230, 234-35, 104 Cal. Rptr. 558, 560-61 (1972);
*Borough of Crafton v. Board of Property Assessments*, 7 Pa.
Com. 291, 308-10, 298 A.2d 643, 651-53 (1972), *rev'd on other
grounds,*____Pa.____, 328 A.2d 819 (1974); *Frye v. Haas*, 182
Neb. 73, 77-78, 152 N.W.2d 121, 125-26 (1967); *Drachman v.
Jay*, 4 Ariz. App. 70, 74-76, 417 P.2d 704, 708-10 (1966); *New
York, Susquehanna & W.R.R. v. Vermeulen*, 44 N.J. 491,
500-02, 210 A.2d 214, 219-20 (1965).

### EQUAL PROTECTION

Taxpayer contends that excise taxpayers are denied equal
protection of the laws because net income, real property,
public service company, and bank franchise taxpayers are
allowed appeals to the Tax Appeals Court and the district
boards of review without prior payment of disputed assess-
ments.

However, taxpayer has failed to prove either that there is
no rational basis for the different treatment of excise tax-
payers or that such different treatment amounts to invidious
discrimination. As the Supreme Court recently stated in
*Lehnhausen v. Lake Shore Auto Parts Co.*, 410 U.S. 356, 359
(1973):

"The Equal Protection Clause does not mean that a State
may not draw lines that treat one class of individuals or
entities differently from the others. The test is whether
the difference in treatment is an *invidious discrimination
. . . . Where taxation is concerned* and no specific federal
right, apart from equal protection, is imperiled, *the States
have large leeway* in making classifications and drawing
lines which in their judgment produce reasonable sys-
tems of taxation." (Emphasis added.)

"'[I]n taxation, even more than in other fields, legisla-
tures possess the greatest freedom in classification.' . . .

'The burden is on the one attacking the legislative arrangement to negative *every conceivable basis* which might support it.'" *Id.* at 364 (emphasis added).

Taxpayer has failed to meet its burden in this case.

### ACCESS TO THE COURTS

Taxpayer contends it has a right of access to the courts, grounded in the due process, equal protection. and right to petition clauses of the U.S. and Hawaii Constitutions. and that this right is violated by a requirement of prior payment of taxes. Yet taxpayer also stipulates that in fact it is able to prepay the disputed taxes without undue hardship. Consequently, it is difficult for this court to see how taxpayer's access to the courts is genuinely blocked. Cases cited by the taxpayer, such as *Griffin v. Illinois*, 351 U.S. 12 (1956) (finding it unconstitutional to require *indigent* criminal defendants to pay for trial transcripts in order to perfect appeal), and *Boddie v. Connecticut*, 401 U.S. 371 (1971) (finding it unconstitutional to require prepayment of court fees in a divorce action where the parties were *unable to afford* the fees) are not on point.

The judgment of the Tax Appeal Court is affirmed.

*James N. Duca (Donahoe* and *Duca* of counsel), for taxpayer-appellant.

*Richard Y. Wada,* Deputy Attorney General *(Ronald Y. Amemiya,* Attorney General. with him on the brief), for director of taxation, appellee.