In the Matter of the Tax Appeals of BACCHUS IMPORTS, LTD., PARADISE BEVERAGES, INC., EAGLE DISTRIBUTORS, INC., and FOREMOST-McKESSON, INC., dba McKesson Wine & Spirits Co., Taxpayers

NO. 7802

(CASE NOS. 1852, 1862, 1866, 1867)

DECEMBER 23, 1982

RICHARDSON, C.J., LUM, NAKAMURA, PADGETT AND HAYASHI, JJ.

568

OPINION OF THE COURT BY NAKAMURA, J.

In this appeal from the Tax Appeal Court, four wholesalers of liquor, Bacchus Imports, Ltd., Paradise Beverages, Inc., Eagle Distributors, Inc., and Foremost-McKesson, Inc. (Bacchus, Paradise, Eagle, and McKesson respectively, the taxpayers collectively) challenge, on constitutional grounds, the levy of excise taxes on the sale or use of liquor pursuant to HRS § 244-4.[1] They assert the statute in question runs afoul of the Equal Protection,[2] Import-Export,[3] and

---

[1] HRS § 244-4, in pertinent part, read as follows when the taxes in question were assessed:

Every person who sells or uses any liquor not taxable under this chapter in respect of the transaction by which such person or his vendor acquired such liquor, shall pay an excise tax which is hereby imposed, equal to twenty per cent of the wholesale price of the liquor so sold or used; provided, that the tax shall be paid only once upon the same liquor; provided, further, that the tax shall not apply to:

. . . .

    (6) Okolehao manufactured in the State for the period May 17, 1971 to June 30, 1981; or
    (7) Any fruit wine manufactured in the State from products grown in the State for the period May 17, 1976 to June 30, 1981.

[2] The Fourteenth Amendment to the federal constitution reads:

All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

[3] Article I, § 10, cl. 2 of the federal constitution reads:

No State shall, without the Consent of the Congress, lay any Imposts or Duties on Imports or Exports, except what may be absolutely necessary for executing it's

Commerce Clauses[4] of the United States Constitution and the Equal Protection Clause of the Hawaii Constitution.[5] Though we have carefully scrutinized the statute with the cited constitutional provisions in mind, we discern no infirmities in HRS § 244-4. We therefore affirm the Tax Appeal Court's decision.

## I.

The Hawaii Liquor Tax, HRS Chapter 244, imposes a levy on the sale or use of alcoholic beverages amounting to twenty percent of the wholesale price of the liquor sold or used, which essentially is an excise levied on the first sale of liquor within the State of Hawaii. *See* note 1 *supra*. At its inception, the tax was one imposed on retailers, and the amount of the levy was six percent of the retail price. S.L.H. 1939, c. 222, § 5. But its incidence has since been shifted to wholesalers and the rate has been raised to twenty percent of the wholesale price.[6] Limited exemptions from the tax have been approved periodically by the legislature; transactions involving okolehao[7] and

---

[sic] inspection Laws: and the net Produce of all Duties and Imposts, laid by any State on Imports or Exports, shall be for the Use of the Treasury of the United States; and all such Laws shall be subject to the Revision and Control of the Congress.

[4] Article I, § 8, cl. 3 of the federal constitution reads:
The Congress shall have Power ... To regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes.

[5] Article I, § 5 of the Hawaii Constitution reads:
No person shall be deprived of life, liberty or property without due process of law, nor be denied the equal protection of the laws, nor be denied the enjoyment of the person's civil rights or be discriminated against in the exercise thereof because of race, religion, sex or ancestry.

[6] S.L.H. 1947, c. 111, § 14 raised the tax rate from six percent to eight percent; S.L.H. 1949, c. 343, § 3 shifted the tax incidence to wholesale transactions and increased the rate to twelve percent of the wholesale price; S.L.H. 1957, c. 1, § 7(b) (special session; 1957 Tax Act) raised the rate to sixteen percent; S.L.H. 1965, c. 155, § 8 increased the rate to twenty percent.

[7] Okolehao is an alcoholic beverage made from the root of the ti plant, an indigenous shrub. The exemption of okolehao was initially approved in 1960 and remained in effect until 1965. S.L.H. 1960, c. 26, § 1. The exemption was reenacted in 1971 to cover a five-year period. S.L.H. 1971, c. 62, § 1. In 1976, the exemption period was extended to June 30, 1981. S.L.H. 1976, c. 39, § 1.

"[a]ny fruit wine manufactured in the State from products grown in the State"[8] were thus free of taxation during the relevant period. This aspect of the Hawaii Liquor Tax has been challenged by the taxpayers.

Bacchus, Paradise,[9] and Eagle are Hawaii corporations licensed to engage in the wholesaling of liquor; McKesson is a Maryland corporation authorized to do business in Hawaii, also licensed as a wholesale liquor dealer under applicable liquor control laws. *See* HRS Chapter 281. Bacchus initially protested the assessment of excise taxes on its sale or use of alcoholic beverages by a letter directed to the State Director of Taxation on May 30, 1979. It subsequently filed a complaint pursuant to HRS § 40-35,[10] seeking a refund of taxes paid during the period between December 1977 and May 1979. Paradise, Eagle, and McKesson quickly followed Bacchus' lead with their letters of protest to the Director and refund suits.[11]

The taxpayers' complaints averred that HRS § 244-4 contravened the Import-Export and Commerce Clauses of the federal constitution because the statute discriminated in favor of locally

---

[8] The only "fruit wine [that was] manufactured in the State from products grown in the State" during the relevant time span was pineapple wine. This exemption was approved in 1976 to cover a five-year period. S.L.H. 1976, c. 39, § 1.

[9] Paradise acknowledges it is a "beneficiary" of the exemptions from taxation provided by HRS § 244-4 for okolehao and fruit wine produced in Hawaii. It nevertheless maintains the statute is unconstitutional probably because the volume of sales of the exempted products is relatively insubstantial.

[10] HRS § 40-35 authorizes a taxpayer to pay taxes under protest and to commence an action in the Tax Appeal Court for the recovery of the disputed sums. *See In re* Otis Elevator Co., 58 Haw. 163, 167 & n.10, 566 P.2d 1091, 1094 & n.10 (1977).

[11] The dates of the letters of protest and the periods for which refunds were sought are set forth below:

| TAXPAYER | DATE OF LETTER | PERIOD PROTESTED PER LETTER |
|---|---|---|
| Bacchus Imports, Ltd. | May 30, 1979 | December, 1977 through May, 1979 |
| Paradise Beverages, Inc. | July 30, 1979 | June, 1977 through July, 1979 |
| Eagle Distributors, Inc. | August 31, 1979 | August, 1974 through July, 1979 |
| Foremost-McKesson, Inc. | September 6, 1979 | August, 1974 through August, 1979 |

produced liquor by providing exemptions for sales and uses of okolehao and fruit wine brewed in Hawaii from locally grown products. The cases were consolidated for trial and disposition by agreement of all the parties and submitted to the Tax Appeal Court for decision on Stipulations of Facts. The court ruled the tax is "a valid State tax," and timely appeals to this court were filed by the taxpayers.

## II.

Focusing on the allegations of unconstitutionality advanced by the taxpayers, we first consider their claim that the favored treatment of okolehao and locally produced fruit wine denies them equal protection.

### A.

We recognize, of course, that the strictures of the Equal Protection Clause condition the exercise of a state's power of taxation. *Bell's Gap Railroad v. Pennsylvania,* 134 U.S. 232 (1890). Still, "the Fourteenth Amendment was not intended to compel the State to adopt an iron rule of equal taxation." *Id.* at 237. For such a construction

> would not only supersede all those constitutional provisions and laws of some of the States, whose object is to secure equality of taxation, and which are usually accompanied with qualifications deemed material; but it would render nugatory those discriminations which the best interests of society require; which are necessary for the encouragement of needed and useful industries, and the discouragement of intemperance and vice; and which every State, in one form or another, deems it expedient to adopt.

*Id.* Moreover, "[i]t has . . . been pointed out that in taxation, even more than in other fields, legislatures possess the greatest freedom in classification." *Madden v. Kentucky,* 309 U.S. 83, 88 (1940) (footnote omitted). And "[t]he burden is on the one attacking the legislative arrangement to negative every conceivable basis which might support it." *Id.* (Footnote omitted).

The legislative arrangement in question, the taxpayers claim, breaches the equal protection guaranty because of its favored treatment of transactions involving okolehao and pineapple wine. But the statute does not establish a classificatory scheme that disfavors any of the taxpayers — all wholesalers of liquor distributing alco-

holic beverages in Hawaii are subject to taxation thereunder in similar fashion. Bacchus, Paradise, and Eagle enjoy no advantage over McKesson, a Maryland corporation, by reason of their incorporation under Hawaii law since their transactions are taxed at the same rate McKesson's are.

B.

The taxpayers nonetheless contend *Allied Stores of Ohio v. Bowers*, 358 U.S. 522 (1959), and *Wheeling Steel Corp. v. Glander*, 337 U.S. 562 (1949), sustain their thesis that the necessary equality of treatment is absent. To be sure, the cases support a proposition that a state tax expressly favoring residents over nonresidents does not pass constitutional muster. Yet we think the cited cases do not boost the taxpayers' cause here; they reinforce instead the validity of the Hawaii Liquor Tax.

In *Wheeling Steel*, the Court struck down provisions of Ohio's ad valorem property tax law that discriminated against foreign corporations by taxing their accounts receivables arising from business transacted within the State but not the property of similar nature owned by residents and domestic corporations. The inequality to which the foreign corporations were subjected was premised solely on the residence of the owners of the accounts receivables.[12] And the Court did not consider the declared purpose of the statute to proffer a scheme of reciprocity in the taxation of such property to other states a redeeming feature. *Wheeling Steel Corp. v. Glander*, 337 U.S. at 572-74.

---

[12] The General Code of Ohio § 5328-1, challenged in *Wheeling Steel*, provided in pertinent part:

> Property of the kinds and classes mentioned in section 5328-2 of the General Code, used in and arising out of business transacted in this state by, for or on behalf of a *non-resident person . . . shall be subject to taxation;* and all such property of *persons residing in this state* used in and arising out of business transacted outside of this state by, for or on behalf of such persons . . . *shall not be subject to taxation. . . .*

(Emphasis added).

The Hawaii Liquor Tax, on the other hand, exempts all sales and uses of okolehao and pineapple wine from taxation. It does not matter whether the transactions are engaged in by foreign corporations or Hawaii corporations. Furthermore, a foreign corporation manufacturing okolehao and pineapple wine in Hawaii would not be treated differently from a Hawaii corporation under the general excise tax law, HRS Chapter 237.

In *Allied Stores,* Ohio's levy of an ad valorem property tax on the contents of warehouses was upheld despite an exemption of merchandise belonging to nonresidents and being held " 'in a storage warehouse for storage only'." The preferred status accorded merchandise owned by nonresidents, the Court held, did not deny Ohio residents equal protection; it found the purpose and policy of the State Legislature could reasonably have been to encourage nonresidents to construct or lease warehouses in Ohio and thereby benefit the State's economy. *Allied Stores of Ohio v. Bowers,* 358 U.S. at 528-29. Thus it concluded the questioned proviso was neither invidious nor palpably arbitrary, and ruled the statute did not deny equal protection to Ohio residents despite the discriminatory classification.

The cited cases therefore confirm that the Court does not countenance the unequal treatment of taxpayers based solely on state residence, *Wheeling Steel Corp. v. Glander,* 337 U.S. at 572; but if the classification rests upon some reasonable consideration of difference or policy, there is no denial of equal protection. *Allied Stores of Ohio v. Bowers,* 358 U.S. at 527-28. On its face, the Hawaii law applies equally to all wholesalers; the taxpayers, however, assert the classification in question carries a discriminatory result. We thus proceed to an examination of the exemption from excise taxation of transactions involving okolehao and pineapple wine to determine whether the exemption is rationally related to the achievement of a valid legislative purpose.

## C.

In deciding whether the challenged classification meets this test of rational relationship, we are compelled to answer two questions: "(1) Does the challenged legislation have a legitimate purpose? and (2) Was it reasonable for the lawmakers to believe that use of the challenged classification would promote that purpose? See *Minnesota v. Clover Leaf Creamery Co.,* 449 U.S., at 461-463; *Vance v. Bradley,* 440 U.S. 93, 97-98 (1979)." *Western & Southern Life Insurance Co. v. State Board of Equalization,* 451 U.S. 648, 668 (1981). *Shibuya v. Architects Hawaii, Ltd.,* 65 Haw. 26, 35, 647 P.2d 276, 283 (1982).

The legislature's reason for exempting "ti root okolehao" from the "alcohol tax" was to "encourage and promote the establishment of a new industry," S.L.H. 1960, c. 26; Sen. Stand. Comm. Rep. No. 87, in 1960 Senate Journal, at 224, and the exemption of "fruit wine

manufactured in the State from products grown in the State" was intended "to help" in stimulating "the local fruit wine industry." S.L.H. 1976, c. 39; Sen. Stand. Comm. Rep. No. 408-76, in 1976 Senate Journal, at 1056.[13] No one could quarrel with the proposition that the promotion of domestic industry is a legitimate state purpose. *See Western & Southern Life Insurance Co. v. State Board of Equalization*, 451 U.S. at 671; *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 143 (1970); *Parker v. Brown*, 317 U.S. 341, 363-67 (1943).

We likewise entertain no doubt that the classification satisfies the second part of the applicable test, for the pertinent inquiry here is only whether the "Legislature *rationally could have believed* that the . . . [classification] would promote its objective." *Western & Southern Life Insurance Co. v. State Board of Equalization*, 451 U.S. at 672 (citations omitted) (emphasis in the original). The lawmakers are under no obligation "to convince the courts of the correctness of their legislative judgments. Rather, 'those challenging the legislative judgment must convince the court that the legislative facts on which the classification is apparently based could not reasonably be conceived to be true by the governmental decisionmaker.' *Vance v. Bradley*, 440 U.S., at 111." *Minnesota v. Clover Leaf Creamery Co.*, 449 U.S. at 464. The taxpayers have not met their burden in this regard. The legislature could rationally have believed the exemption would promote its objective, and nothing has been presented to controvert this.

### D.

The taxpayers' equal protection claim also encompasses a putative breach of the State counterpart of the Equal Protection Clause. *Compare* U.S. Const. amend. XIV, § 1 and Hawaii Const. art. 1, § 5. In passing on an earlier taxpayer challenge of our tax laws premised on an alleged violation of the foregoing State constitutional provision, we structured our analysis on Supreme Court precedent, particularly *Lehnhausen v. Lake Shore Auto Parts Co.*, 410 U.S. 356, 359 (1973).

---

[13] The Supreme Court has stated that in equal protection analysis, it may be assumed "that the objectives articulated by the legislature are actual purposes of the statute, unless an examination of the circumstances forces . . . [a conclusion] that they 'could not have been a goal of the legislation.'" Minnesota v. Clover Leaf Creamery Co., 449 U.S. 456, 463 n.7 (1981) (quoting Weinberger v. Wiesenfeld, 420 U.S. 636, 648 n.16 (1975)).

*See In re Simpson Manor, Inc.,* 57 Haw. 1, 548 P.2d 246 (1976). And *Lehnhausen* was quoted to the following effect:

> ' "[I]n taxation, even more than in other fields, legislatures possess the greatest freedom in classification." . . . "The burden is on the one attacking the legislative arrangement to negative *every conceivable basis* which might support it." '

*Id.* at 8-9, 548 P.2d at 251 (citation omitted) (emphasis in the original). The claim there was rejected because the taxpayer had "failed to meet its burden"; we perceive no reason to regard the present challenge more favorably. *Id.* The taxpayers have not even attempted to negative the declared basis for enacting the exemptions.

### III.

Having found no denial of equal protection, we turn to the assertion that the Hawaii Liquor Tax contravenes the Import-Export Clause of the federal constitution. The taxpayers contend that HRS § 244-4 is discriminatory on its face and thus violative of the clause because of the exemption of transactions involving locally produced okolehao and fruit wine. They further assert the excise tax is actually a prohibited import duty since it is levied on wholesale value, which in the case of liquor of foreign origin perforce includes the amount of the duty levied by the federal government and transportation costs. This, they maintain, results in a disproportionate State levy on liquor of foreign origin. They also claim the rate at which the tax is applied deters the consumption of such liquor and indirectly deprives the federal government of revenue. The precepts enunciated in *Michelin Tire Corp. v. Wages,* 423 U.S. 276 (1976), and ratified by *Washington Revenue Department v. Stevedoring Association,* 435 U.S. 734 (1978), in the taxpayers' view, proscribe the imposition of the tax. We do not read the Import-Export Clause and *Michelin* to have such effect.

### A.

The Import-Export Clause commits "sole power to lay imposts and duties on imports in the Federal Government, with no concurrent state power." *Michelin Tire Corp. v. Wages,* 423 U.S. at 285. But "the term 'Impost or Duty' is not self-defining and does not

necessarily encompass all taxes." *Washington Revenue Department v. Stevedoring Association*, 435 U.S. at 759. The foregoing cases give us examples of what is not encompassed therein. In the former, the Court held Georgia's levy of a general ad valorem property tax on Michelin's inventory of imported tires and tubes stored in a Georgia warehouse was not interdicted by the Import-Export Clause. *Michelin Tire Corp. v. Wages*, 423 U.S. at 302. And in *Washington Revenue Department*, the application of Washington's business and occupation tax to stevedoring was approved, even though it reached services provided within the State "to imports, exports, and other goods." *Washington Revenue Department v. Stevedoring Association*, 435 U.S. at 761.

In reaching these decisions, the Court "examined whether the exaction offended any of the three policy considerations leading to the presence of the Clause:

'The Framers of the Constitution thus sought to alleviate three main concerns . . . : the Federal Government must speak with one voice when regulating commercial relations with foreign governments, and tariffs, which might affect foreign relations, could not be implemented by the States consistently with that exclusive power; import revenues were to. be the major source of revenue of the Federal Government and should not be diverted to the States; and harmony among the States might be disturbed unless seaboard States, with their crucial ports of entry, were prohibited from levying taxes on citizens of other States by taxing goods merely flowing through their ports to the other States not situated as favorably geographically.' "

*Washington Revenue Department v. Stevedoring Association*, 435 U.S. at 752-53 (quoting *Michelin Tire Co. v. Wages*, 423 U.S. at 285-86) (footnotes omitted). Our task then is to scrutinize HRS § 244-4 in the light of the concerns that, in the Court's opinion, explain the presence of the clause.

**B.**

HRS § 244-4 provides that "[e]very person who sells or uses any liquor . . . [not previously taxed thereunder] shall pay an excise tax . . . equal to twenty per cent of the wholesale price of the liquor so sold or used." As the tax is usually imposed on the person who engages in the first sale or use of liquor in the State and is measured

by wholesale value, it is in effect an excise levied on wholesalers. In this sense, it resembles the Washington business and occupation tax that was deemed a permitted tax, rather than a prohibited import duty, by the Court. The taxpayers, however, claim an objectionable feature, the exemption of okolehao and fruit wine, causes it to transgress the first two policy considerations underlying the Import-Export Clause. We do not find their argument convincing, for like the Georgia property tax and the Washington business and occupation tax, the Hawaii Liquor Tax offends none of the policy considerations delineated by the Court in *Michelin* and *Washington Revenue Department.*[14]

---

[14] The Court summarized the reasons why there was no breach of the clause in the foregoing situations in the latter case. With respect to the tax at issue in *Michelin*, it concluded in relevant part:

The ad valorem property tax there at issue offended none of . . . [the] policies. It did not usurp the Federal Government's authority to regulate foreign relations since it did not 'fall on imports as such because of their place of origin.' . . . As a general tax applicable to all property in the State, it could not have been used to create special protective tariffs and could not have been applied selectively to encourage or discourage importation in a manner inconsistent with federal policy. Further, the tax deprived the Federal Government of no revenues to which it was entitled. The exaction merely paid for services, such as fire and police protection, supplied by the local government. Although the tax would increase the cost of the imports to consumers, its effect on the demand for Michelin tubes and tires was insubstantial. The tax, therefore, would not significantly diminish the number of imports on which the Federal Government could levy import duties and would not deprive it of income indirectly.

Washington Revenue Department v. Stevedoring Association, 435 U.S. at 753 (citation omitted).

And its relevant conclusions with respect to the Washington tax were:

A similar approach demonstrates that the application of the Washington business and occupation tax to stevedoring threatens no Import-Export Clause policy. First, the tax does not restrain the ability of the Federal Government to conduct foreign policy. As a general business tax that applies to virtually all businesses in the State, it has not created any special protective tariff. The assessments in this case are only upon business conducted entirely within Washington. No foreign business or vessel is taxed. Respondents, therefore, have demonstrated no impediment posed by the tax upon the regulation of foreign trade by the United States.

Second, the effect of the Washington tax on federal import revenues is identical to the effect in *Michelin*. The tax merely compensates the State for services and protection extended by Washington to the stevedoring business. Any indirect effect on the demand for imported goods because of the tax on the value of loading and unloading them from their ships is even less substantial than the effect of the direct ad valorem property tax on the imported goods themselves.

*Id.* at 754.

Hawaii's tax on wholesaling activity applies to all liquor wholesalers engaged in business in the State. It touches all local sales and uses of liquor produced in foreign countries, in the mainland States, and in Hawaii, with the exception of okolehao and pineapple wine.[15] There is absolutely no indication that it has been applied selectively to discourage imports in a manner inconsistent with foreign policy. Nor is there a scintilla of evidence that it has the effect of a protective tariff or that it has any substantial indirect effect on the demand for imported liquor. And no reason whatsoever to consider the limited exemption a threat to the federal treasury appears.[16] *Michelin* and *Washington Revenue Department* thus sustain a conclusion that the tax in question is not a prohibited import duty. *See* note 14 *supra*.

## IV.

Though we have concluded the Hawaii Liquor Tax infringes neither the Equal Protection Clause nor the Import-Export Clause, whether it "falls short of the substantially even-handed treatment demanded by the Commerce Clause" remains for decision. *Boston Stock Exchange v. State Tax Commission*, 429 U.S. 318, 332 (1977).

## A.

"In reviewing Commerce Clause challenges to state taxes . . . [the Court's objective] has . . . been to 'establish a consistent and rational method of inquiry' focusing on 'the practical effect of a challenged tax.' *Mobil Oil Corp. v. Commissioner of Taxes*, 445 U.S. 425, 443 (1980)." *Commonwealth Edison Co. v. Montana*, 453 U.S. 609, 615 (1981). The method of inquiry presently favored by the Court is the four-part test described in *Complete Auto Transit, Inc. v. Brady*, 430 U.S. 274 (1977). "Under that test, a state tax does not offend the Commerce Clause if it 'is applied to an activity with a substantial

---

[15] Okolehao and pineapple wine are not the only alcoholic beverages produced in Hawaii. Also produced here are fruit liqueurs and sake, a Japanese-type rice wine.

[16] We need not consider the third policy consideration described in *Michelin* and *Washington Revenue Department* since the taxpayers concede it does not apply to this case.

nexus with the taxing State, is fairly apportioned, does not discriminate against interstate commerce, and is fairly related to services provided by the State.' 430 U.S., at 279." *Commonwealth Edison Co. v. Montana,* 453 U.S. at 617.

The taxpayers do not dispute that the Hawaii Liquor Tax satisfies the first and fourth prongs of the test, for the activity subject to taxation is the wholesaling of liquor in Hawaii and the revenues derived are for the support of general governmental services. The tax is challenged on grounds that it does not meet the test's second and third requisites, *i.e.,* it is discriminatory and not fairly apportioned. But we are also unable to perceive any basis to seriously consider the taxpayers' assertion that the tax is not fairly apportioned since they agree it is assessed only on intrastate sales and uses of liquor. It has no extraterritorial effect and the State does not seek thereby to obtain a share of a taxpayer's net income derived from an interstate enterprise. Nor is there a possibility that it will subject "interstate business to a burden of duplicative taxation that an intrastate taxpayer would not bear." *Mobil Oil Corp. v. Commissioner of Taxes,* 445 U.S. at 443. No issue related to fair apportionment is extant, and our examination of the tax centers on whether it discriminates against interstate commerce.

## B.

In our analysis of the equal protection claim, we discerned no disparate treatment of taxpayers. For Bacchus, Paradise, and Eagle gain nothing over a foreign corporation because of their incorporation under Hawaii law. That McKesson is a Maryland corporation and engaged in business elsewhere plays no part in fixing its liability under HRS § 244-4. The corporation presumably is also free to engage in the wholesaling of okolehao and pineapple wine if it has reason to believe this will relieve its tax burden.[17] We detect no discrimination against Bacchus, Paradise, Eagle, McKesson, or interstate commerce under the circumstances.

---

[17] We noted earlier that Paradise, a Hawaii corporation engaged in the wholesaling of okolehao, also claims the tax violates the Commerce Clause. *See* note 9 *supra.* We find it difficult to give much credence to a claim that the tax creates an undue burden on interstate commerce when the argument is advanced by one who logically would be a "beneficiary" of the alleged discrimination.

The taxpayers nonetheless argue *Maryland v. Louisiana,* 451 U.S. 725 (1981), and its precursors preclude the validation of HRS § 244-4. *Maryland* was an original action brought in the Supreme Court by several states and the federal government, challenging the Louisiana First-Use Tax on natural gas on grounds that it contravened the Supremacy and Commerce Clauses. We are, of course, mindful of the following precepts of "Commerce Clause jurisprudence" that were reiterated by the Court there:

> One of the fundamental principles of Commerce Clause jurisprudence is that no State, consistent with the Commerce Clause, may 'impose a tax which discriminates against interstate commerce . . . by providing a direct commercial advantage to local business.' *Northwestern States Portland Cement Co. v. Minnesota,* 358 U.S. 450. 458 (1959). See *Boston Stock Exchange v. State Tax Comm'n,* 429 U.S. 318, 329 (1977). This antidiscrimination principle 'follows inexorably from the basic purpose of the Clause' to prohibit the multiplication of preferential trade areas destructive of the free commerce anticipated by the Constitution. *Boston Stock Exchange, supra.* See *Dean Milk Co. v. [City of] Madison,* 340 U.S. 349, 356 (1951).

*Id.* at 754, and

> A state tax must be assessed in light of its actual effect considered in conjunction with other provisions of the State's tax scheme. 'In each case it is our duty to determine whether the statute under attack, whatever its name may be, will in its practical operation work discrimination against interstate commerce.' *Best & Co. v. Maxwell,* 311 U.S. 454, 455-456 (1940). See *Halliburton Oil Well Cementing Co. v. Reily,* 373 U.S. 64, 69 (1963); *Gregg Dyeing Co. v. Query,* 286 U.S. 472, 478-480 (1932). In this case, the Louisiana First-Use Tax unquestionably discriminates against interstate commerce in favor of local interests as the necessary result of various tax credits and exclusions.

*Id.* at 756.

Yet, Hawaii's excise on intrastate sales and uses of liquor can hardly be likened to Louisiana's tax on the "first-use" of any natural gas brought into the state without being taxed previously by another state or the federal government. The primary impact of that levy was on gas produced in the Outer Continental Shelf and piped to processing plants in Louisiana. Some of this gas was sold to Louisiana

consumers, but most of it was eventually sold to out-of-state consumers. Louisiana consumers for the most part were not burdened with the levy due to exemptions and credits provided by State law, but the tax applied uniformly to gas moving out of the state. *Id.* at 731-33. The Court found the "First-Use Tax, while imposed on the pipeline companies, . . . [was] clearly intended to be passed on to the ultimate consumer." *Id.* at 736. And it struck down a scheme of taxation that "resulted in Louisiana customers being 'protected in whole or in part from the incidence of the tax which is passed on to consumers out of the State.' " *Id.* at 758. Unlike the situation in *Maryland v. Louisiana, supra,* the incidence of the tax here is on wholesalers of liquor in Hawaii and the ultimate burden is borne by consumers in Hawaii.

Nor can HRS § 244-4 be equated with the New York statute imposing a transfer tax on securities transactions which was invalidated by the Court in *Boston Stock Exchange v. State Tax Commission, supra.* For there, an amendment to the theretofore uniform tax caused transactions involving out-of-state sales to be taxed more heavily than most transactions involving in-state sales.[18] The instant situation also bears no likeness to that in *Halliburton Oil Well Cementing Co. v. Reily, supra,* where the taxpayer was engaged in servicing oil wells in Louisiana and several other oil-producing states and the specialized servicing equipment it had assembled in Oklahoma and used in its Louisiana operation was subjected to use taxation by Louisiana, which applied the tax to the value of labor expended and

---

[18] The questioned legislative action and its effect were summarized as follows in the Court's opinion:

[T]he legislature in 1968 enacted § 270-a to amend the transfer tax by providing for two deviations from the uniform application of § 270 when one of the taxable events, a sale, takes place in New York. First, transactions by nonresidents of New York are afforded a 50% reduction ('nonresident reduction') in the rate of tax when the transaction involves an in-state sale. Taxable transactions by residents (regardless of where the sale is made) and by nonresidents selling outside the State do not benefit from the rate decrease. Second, § 270-a limits the total tax liability of any taxpayer (resident or nonresident) to $350 (maximum tax) for a single transaction when it involves a New York sale. If a sale is made out-of-State, the § 270 tax rate applies to an in-state transfer (or other taxable event) without limitation.

Boston Stock Exchange v. State Tax Commission, 429 U.S. at 324-25 (footnotes omitted).

shop overhead incurred in assembling the equipment. The State conceded this cost factor would not have been subject to taxation if the taxpayer had assembled the equipment in Louisiana rather than in Oklahoma. *Id.* at 66-67.[19] The Court logically concluded a condition precedent for a valid state tax, the even-handed treatment of in-state and out-of-state taxpayers, had not been met. *Id.* at 70. But the Louisiana use tax cannot be categorized with the Hawaii Liquor Tax.[20]

The tax in question here is definitely not a barricade against the movement of trade, *see e.g., City of Philadelphia v. New Jersey,* 437 U.S. 617 (1978); *Dean Milk Co. v. City of Madison, supra,* nor is it a means through which Hawaii seeks more than a just share of the income earned by taxpayers engaged in multi-state enterprises. *See e.g., Mobil Oil Corp. v. Commissioner of Taxes, supra; Northwestern States Portland Cement Co. v. Minnesota, supra.* And our survey of the case law of Commerce Clause litigation in the Supreme Court has uncovered no instance where a state tax of similar nature has been voided. The taxpayers have failed to demonstrate that the Hawaii Liquor Tax in its practical operation works discrimination against interstate commerce.[21]

---

[19] The stipulation of facts upon which the case was submitted for decision stated in part:

'If Halliburton had purchased its materials, operated its shops, and incurred its Labor and Shop Overhead expenses at a location within the State of Louisiana, there would have been a sales tax due to the State of Louisiana upon the cost of materials purchased in Louisiana and a Use Tax on materials purchased outside of Louisiana; but there would have been no Louisiana sales tax or use tax due upon the Labor and Shop Overhead.'

Halliburton Oil Well Cementing Co. v. Reily, 373 U.S. at 67.

[20] We also have good reason to believe neither okolehao nor pineapple wine is produced elsewhere. Thus, our situation is totally different from *Halliburton* where the equipment was assembled out of state, but could have been assembled in Louisiana too.

Furthermore, the producers of okolehao and pineapple wine are not exempted from payment of the general excise tax imposed by HRS Chapter 237.

[21] Though the taxpayers submitted no evidence on the amount of okolehao and pineapple wine sold in Hawaii, we believe we can safely assume these products pose no competitive threat to other liquors produced elsewhere and consumed in Hawaii.

We also find it unnecessary to address the taxpayers' claim that the rate of taxation in itself constitutes a violation of the Commerce Clause. "The simple fact is that the

The decision of the Tax Appeal Court upholding the assessment of the tax against Bacchus Imports, Ltd., Paradise Beverages, Inc., Eagle Distributors, Inc., and Foremost-McKesson, Inc. is affirmed.

*Allan S. Haley (Cronin, Fried, Sekiya, Haley & Kekina,* of counsel) for plaintiffs-appellants Bacchus Imports and Eagle Distributors.

*Bruce C. Bigelow (Julian H. Clark* with him on the briefs; *Case, Kay & Lynch,* of counsel) for plaintiff-appellant Foremost-McKesson; joined in opening briefs of Bacchus Imports, Foremost-McKesson & Eagle Distributors: *Michael K. Kawahara (Vernon F. L. Char* with him on the joinder; *Damon, Key, Char & Bocken,* of counsel) for plaintiff-appellant Paradise Beverages.

*T. Bruce Honda (Allan S. Chock* on the brief), Deputy Attorneys General, for defendant-appellee Director of Taxation.

---

appropriate level or rate of taxation is essentially a matter for legislative, and not judicial, resolution." Commonwealth Edison Co. v. Montana, 453 U.S. at 627 (footnote omitted).